# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ELENA FAMULARCANO,                    Case No. 1:10-cv-511
    Plaintiff

                                             Spiegel, J.
    vs                                Litkovitz, M.J.

SANMAR CORP., et al.,                 **ORDER AND REPORT AND**
    Defendants                        **RECOMMENDATION**

Plaintiff Elena Famularcano brings this action pro se[1] against defendants SanMar Corporation and Danny Bailey alleging discrimination in employment.  Plaintiff alleges that defendants discriminated against her on the basis of her race and national origin, created a hostile working environment, and retaliated against her in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (Title VII), and Ohio Rev. Code § 4112.01 *et seq.* (Doc. 1).  Plaintiff also brings a state law claim for intentional infliction of emotional distress under the Court's supplemental jurisdiction, 28 U.S.C. § 1367.  This matter is before the Court on defendants' motion for summary judgment, affidavits in support thereof, and "reply" memorandum (Docs. 35-38), to which plaintiff has not responded; and plaintiff's motion for extension of time (Doc. 39) and defendants' memorandum in opposition.  (Doc. 40).

## I. PLAINTIFF'S MOTION FOR EXTENSION OF TIME IS DENIED.

On June 12, 2012, defendants filed their motion for summary judgment.  (Doc. 35). Under the local rules of this Court, plaintiff's response to defendants' motion was due on July 6, 2012.  S.D. Ohio Civ. R. 7.2(a)(2).  Plaintiff failed to respond to the motion for summary judgment within the time provided, and on July 16, 2012, defendants filed a "reply"

---

[1]Famularcano's former lawyer terminated his representation of plaintiff on September 21, 2011.  (Doc. 21).

memorandum reiterating their request for summary judgment in their favor and dismissal of this action with prejudice.  (Doc. 38).  On August 14, 2012, two months after defendants filed their motion for summary judgment, plaintiff filed a motion for extension of time, the body of which states in full, "To whom it may concern, I am asking for permission to file a Motion in Court additional time to file a Respond (sic)."  (Doc. 39).

   The Federal Rules of Civil Procedure permit extensions of time for responding to motions for good cause shown.  *See* Fed. R. Civ. P. 6(b).  Where a request for an extension is made "after the time has expired" for responding to the motion, the party requesting the extension must show the failure to act was "because of excusable neglect."  Fed. R. Civ. P. 6(b)(1)(B).  To demonstrate excusable neglect, a  litigant must show: (1) the failure to meet the deadline was a case of neglect; and (2) the failure to act was excusable.  *Turner v. City of Taylor,* 412 F.3d 629, 650 (6th Cir. 2005).  "Neglect exists where the failure to do something occurred because of a simple, faultless omission to act, or because of a party's carelessness."  *Id.* (citing *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380, 388 (1993)).  In determining whether neglect is "excusable," the Court should consider "the danger of prejudice to the [non-moving party], the length of the delay and its impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."  *Id.*

   This case has been pending for over two years and defendants have complied with the applicable deadlines set by the Court in its scheduling order.  A final pretrial conference is tentatively scheduled for October 2012 and a jury trial is tentatively set for November 2012. (Doc. 29).  Granting plaintiff an extension of time to respond to the motion for summary

2

judgment would necessarily delay the proceedings in this case and a resolution on the merits.

More importantly, plaintiff offers no justification whatsoever for the requested extension, nor any

explanation for her failure to file a response to the motion for summary judgment. Not only has

plaintiff failed to show "cause" for her extension request, let alone "good" cause, plaintiff has not

alleged any facts showing her failure to timely respond to defendants' motion for summary

judgment amounts to excusable neglect. Excusable neglect is a "strict standard which is met only

in extraordinary cases." *Nicholson v. City of Warren*, 467 F.3d 525, 527 (6th Cir. 2006) (citing

*Marsh v. Richardson*, 873 F.2d 129, 130 (6th Cir. 1989)). Generally, inadvertence, ignorance of

the rules, or mistakes interpreting the rules, even by those proceeding without counsel, do not

constitute excusable neglect. *Id.* (citing *Pioneer Inv.,* 507 U.S. at 392; *McNeil v. United States*,

508 U.S. 106, 113 (1993)). Because plaintiff presents no justification or explanation for her lack

of a timely response to defendants' motion and her belated request for an extension of time,

plaintiff has not established good cause or excusable neglect for the granting of an extension of

time to respond to the motion for summary judgment.

    The Court recognizes that plaintiff is proceeding in this matter pro se. Nevertheless, pro

se litigants are held to the same standards as other litigants when it comes to easily understood

deadlines, rules, and procedures. *See Pilgrim v. Littlefield,* 92 F.3d 413, 416 (6th Cir. 1996);

*Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991).[2] The fact that plaintiff is representing herself

in this matter, in itself, does not justify an extension of time absent good cause shown for her

---

[2]The Court also notes that plaintiff was referred to the Court's website for a copy of "Pro-se Litigants Handbook - representing yourself in US District Court" on December 12, 2011 for assistance in proceeding in this case. Notably, the handbook advises litigants: **"This manual does not relieve you of your responsibility to comply with the Federal Rules of Civil Procedure, the Local Rules, and all other applicable rules. It is your responsibility to find and to know these rules if you choose to represent yourself in federal court."** (Pro Se Handbook at 4).

noncompliance with the rules.  For these reasons, the Court denies plaintiff's motion for extension of time.

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED.

### A. Undisputed Facts

Defendants present the following evidence in support of their motion for summary judgment which, as noted above, has not been opposed by plaintiff:[3]

SanMar is a wholesale distributor of imprintable apparel and accessories.  (Doc. 36, Declaration of Marty Raskin).  SanMar supplies businesses with quality clothing and various other products upon which logos, brand names, and graphics can be printed.  *Id.*  The accuracy of order fulfillment and timely processing of orders are extremely important parts of SanMar's business.  *Id.*  When SanMar ships an order that does not reflect what a customer actually purchased, or orders are delayed, SanMar jeopardizes its hard-won goodwill and risks losing customers.  *Id.*

Famularcano's primary job at SanMar was to efficiently and accurately fill customer orders.  She first became employed with SanMar on August 25, 2004, as an order "picker" at SanMar's West Chester, Ohio distribution facility in the Cincinnati area.  (Doc. 37, Declaration of Thomas P. Holt; Ex. A (transcript of deposition of plaintiff, hereafter "Famularcano Dep.") at 26:15-23; *see also* Ex. B to Holt Decl. (Famularcano "Employee Information Sheet")).  An order "picker" is a distribution center employee who reads customer orders, goes into the distribution center's warehouse facility, and retrieves products to be packed for shipment.  (Doc. 36, Rask

---

[3]In failing to file a memorandum in opposition to defendants' motion for summary judgment, plaintiff has failed to offer any facts or evidence to support her claims.  As such, the facts as presented by defendants are undisputed.

Decl.).

In September 2004, Famularcano transferred to "Special Services." (Famularcano Dep. at 28:23-29:13). Special Services employees handle a variety of tasks related to shipping orders, but approximately 20 percent of their work also consists of "picking" orders. (Famularcano Dep. at 42:17--43:5; Doc. 36, Rask Decl.). On August 24, 2008, Famularcano moved back to "picking" exclusively. (Famularcano Dep. at 55:13-56:5; *see also* Doc. 37, Ex. C to Holt Decl.). At all times during Famularcano's employment with SanMar, efficiency and accuracy in picking and processing customer orders were core qualifications and job functions for each of her positions. (Doc. 36, Rask Decl.).

On September 10, 2004, Famularcano was provided with a warning stating "Maelena[4] was talked to today concerning her LPH.[5] She was told she has 1 more week to try to get her LPH above the minimum LPH of 35. If she is unable to do this, then she will be dismissed from Sanmar." (Doc. 37, Ex. D to Holt Decl.). In her performance evaluation for her first year at SanMar, Famularcano was counseled that her efficiency and accuracy were unsatisfactory. With respect to her "Quantity of Work," she was informed, "You are not doing well. Your performance does not meet your job requirements by not maintaining 35 LPH." (Doc. 37, Ex. E to Holt Decl.) (8/25/05 performance evaluation at 1). With respect to her "Quality of Work," defined as the "Accuracy in which the employee completes his/her work," Famularcano was counseled, "Your accuracy does not meet the requirements because you are below 99%." *Id.* Famularcano was ranked "Below" expectations in both "Accuracy" and "Productivity." *Id.* at 2.

---

[4]Famularcano goes by several nicknames, including Maelena and Lala. *See* Famularcano Dep. at 56:20-57:5 (Lala), 138:5-10 (Maelena).

[5]LPH stands for "lines per hour," a measure of how efficiently employees are processing customer orders. *See* Famularcano Dep. at 105:22-106:14.

On June 28, 2007, after the requirements for picker productivity increased to 40 LPH, Famularcano was provided with a written warning stating that she was "not meeting the minimum standards in picking." (Doc. 37, Ex. F to Holt Decl.). The warning stated, "The standards must be met with 40 LPH or above and 99% or above accuracy. Currently they are below the standards of 5/8 weeks. Failure to comply will mandate another write-up, up to 3 total. The employee will lose money or can possibly face termination if the minimums are not adhered to." *Id.* Two weeks later, on July 12, 2007, Famularcano again fell below the minimum performance standards and was again provided with a written warning informing her that she could face discharge. (Doc. 37, Ex. G to Holt Decl.). On August 10, 2007, Famularcano received a "final" warning regarding her inability to meet efficiency and accuracy standards. (Doc. 37, Ex. H to Holt Decl.). This warning stated, "This is the 3rd and final write-up concerning this. Failure to comply will mandate termination." *Id.*

Following this warning, Famularcano made her one and only complaint of any kind while employed at SanMar. (Famularcano Dep. at 37:6-13 ("Only just one" complaint); *id.* at 65:23-66:8 ("I don't have any complaints, that's why I did not ask them."); *id.* at 113:4-18 (detailing lack of of complaints)). The incident about which Famularcano complained, together with her cousin Lourdes Oro and her sister Lilia Hembree, involved what Famularcano described as "bullying" by another employee. (Doc. 37, Ex. I to Holt Decl.) (memorandum dated 5/12/08); (Famularcano Dep. at 29:14-31:23 (recitation of complaint meeting and "bullying")). Famularcano admits that this incident had nothing to do with her race or national origin (Famularcano Dep. at 115:14-20) and that she was never disciplined for complaining about the other employee. (Famularcano Dep. at 37:25-38:2, 82:11-83:20).

6

On August 25, 2008, Famularcano was again specifically counseled during an annual performance evaluation that she was failing to meet minimum standards for accuracy, again receiving a "Below" expectations rating. (Doc. 37, Ex. J to Holt Decl.). She was also expressly counseled, "Your picking accuracy can use improvement. Please be more careful when picking." *Id.* Two days later, on August 27, 2008, Famularcano again failed to meet minimum accuracy standards and received another warning for failing to do so. (Doc. 37, Ex. K to Holt Decl.). As with her prior warnings, this warning specified, "Failure to comply will mandate another write-up, up to three total," and "The employee will lose money or can possibly face termination if the minimums are not adhered to." *Id.*

On February 19, 2009, Famularcano was again warned that she was failing to meet minimum accuracy standards. (Doc. 37, Ex. L to Holt Decl.). The warning stated, "This is the 2nd write up concerning this. Failure to comply will mandate another write-up, up to 3 total," and again stated "[t]he employee . . . can face termination if the minimums are not adhered to." *Id.*

In August 2009, as part of its continuing process of improving its operations and maximizing customer service, SanMar implemented a revised protocol to improve the efficiency of its employees in filling customer orders for shipment, as well as the accuracy with which customer orders are packed. (Doc. 36, Rask Decl.). When it adopted this new protocol, SanMar's ability to improve efficiency and accuracy increased substantially. *Id.* An important part of this involved SanMar entering incorrectly pulled orders into a database when checkers detected them. *Id.* Not only did this allow SanMar to monitor more completely the accuracy of its orders, it also allowed SanMar to provide additional training to pickers who were having

7

difficulty retrieving customer orders correctly.  *Id.*

In SanMar's Cincinnati-area distribution center, pickers are required to maintain at least 99 percent accuracy in picking orders, on average.  (Doc. 36, Rask Decl.; *see also* Ex. A to Rask Decl.) (Written Warning and Incentive Criteria provided to distribution center employees). Employees are notified of accuracy problems and have the opportunity to correct them, but if they are unable to do so in a timely manner and checkers continue to detect incorrectly filled orders, the pickers' overall accuracy rating is affected.  (Doc. 36, Rask Decl.).   When a picker's accuracy rating consistently falls below acceptable levels, the picker is given a warning.  *Id.*  If, after several of these warnings, the picker is simply unable to improve his or her performance and continues to fill orders incorrectly, SanMar will discharge the picker.  *Id.*

In August 2009, Famularcano again failed to improve her performance and was again warned in writing.  (Doc. 37, Ex. M to Holt Decl.) (8/29/09 warning, informing Famularcano of failure to meet minimum requirements and stating, "A maximum of three (3) notices will be given regarding this matter.").  Famularcano received this warning and signed it.  (Famularcano Dep. at 96:12-16).  The following week, Famularcano again failed to meet minimum standards and was again warned.  (Doc. 37, Ex. N to Holt Decl.) (9/5/09 warning).  Famularcano received and signed this warning.  (Famularcano Dep. at 98:2-100:5.6).  One week later, Famularcano again failed to meet minimum standards and was again warned.  (Doc. 37, Ex. 0 to Holt Decl.) (9/12/09 warning).  This warning expressly stated, "This is your last notice regarding this matter."  *Id.*  For each subsequent week that followed, Famularcano failed to meet the minimum accuracy level necessary for her position.  (Doc. 37, Ex. P to Holt Decl.) (10/3/09 termination notice).  On October 3, 2009, SanMar terminated Famularcano's employment.  *Id.*

8

Between October 3, 2009 and November 16, 2009, SanMar terminated the employment of seven employees in its Cincinnati-area distribution facility for not meeting minimum productivity or accuracy standards. (Doc. 36, Rask Decl.). Famularcano was the only Filipino or Asian employee whose employment was terminated. *Id.* Famularcano testified she is personally aware of non-Asian, non-Filipino pickers who were discharged for exactly the same reason that she was. (Famularcano Dep. at 80:9-81:3; Famularcano Dep. at 106:22-108:2).

Famularcano admits that her (Asian, Filipino) sister and her (Asian, Filipino) cousin are still employed in comparable positions in SanMar's West Chester facility. (Famularcano Dep. at 61:4-63:18).

Famularcano filed a charge with the United States Equal Employment Opportunity Commission alleging discrimination and retaliation. (Doc. 37, Ex. Q to Holt Decl.). The charge document identifies only "National Origin" and "Retaliation" as the bases for the charge. *Id.* at 1. The narrative portion of the charge states:

> 1. I am Filipino. On or about October 6, 2009, I was terminated because of my national origin.
>
> 2. Danny Bailey, my Supervisor, terminated me because of unsatisfactory work performance.
>
> 3. I believe that I was discriminated against because of my national origin in violation of the Civil Rights Act of 1964, as amended.

*Id.* at 3. Subsequently, Famularcano filed an additional charge. (Doc. 37, Ex. R to Holt Decl.; Ex. S to Holt Decl.). Famularcano alleged SanMar retaliated against her when it gave her an unfavorable reference after she applied for another job. (Doc. 37, Ex. S to Holt Decl. at 3).

Famularcano testified that no one at SanMar ever made a comment to her about being Filipino or about her race when she worked at SanMar. (Famularcano Dep. at 113:3-115:20).

9

**B. Standard of review**

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "[A] party seeking summary judgment . . . bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. *See also Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir. 1982). The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case. *See Barnhart v. Pickrel, Shaeffer & Ebeling Co. L.P.A.*, 12 F.3d 1382, 1389 (6th Cir. 1993).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)). In response to a properly supported summary judgment motion, the non-moving party "is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (quoting *First Nat'l Bank*, 391 U.S. at 288-89). Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which

10

the non-moving party relies." *Guarino*, 980 F.2d at 405 (citing *Inter-Royal Corp. v. Sponseller*,

889 F.2d 108, 111 (6th Cir. 1989).

The movant bears the burden of demonstrating that no material facts are in dispute. *See*

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The

non-moving party's failure to respond to the motion does not lessen the burden on either the

moving party or the Court to demonstrate that summary judgment is appropriate. *Mongan v.*

*Lykins,* No. 1:09-cv-00626, 2010 WL 2900409, at *3  (S.D. Ohio 2010) (citing *Guarino*, 980

F.2d at 410; *Carver v. Bunch*, 946 F.2d 451, 454-455 (6th Cir. 1991)). Judge Spiegel in *Mongan*

explained the Court's obligation when evaluating an unopposed motion for summary judgment as

follows:

> [T]he Court must review carefully those portions of the submitted evidence
> designated by the moving party. The Court will not, however, sua sponte comb
> the record from [the non-moving party's] perspective. Instead, the Court may
> reasonably rely on [the movant's] unrebutted recitation of the evidence, or
> pertinent portions thereof, in reaching a conclusion that certain evidence and
> inferences from evidence demonstrate facts which are uncontroverted. If such
> evidence supports a conclusion that there is no genuine issue of material fact, the
> Court should determine that [the movants] have carried their burden. . . .

*Id.* (internal quotations and citations omitted).

**C. Summary judgment should be granted for defendants on plaintiff's race[6] and
national origin discrimination claims.**

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to

. . . discharge any individual, or otherwise to discriminate against any individual with respect to

---

[6]The Court declines to reach defendants' alternative argument that plaintiff failed to exhaust her
administrative remedies before the EEOC on her race discrimination claim (Doc. 35 at 13) because even assuming
the Court would consider plaintiff's race discrimination claim as reasonably related to or growing out of the factual
allegations in plaintiff's EEOC charge, *see Younis v. Pinnacle Airlines, Inc.,* 610 F.3d 359, 362 (6th Cir. 2010),
plaintiff's race claim would nevertheless fail for the same reasons that her national origin discrimination claim fails.

his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).[7] A plaintiff may establish a discrimination claim by either direct or circumstantial evidence. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir. 2010). "Direct evidence of discrimination is 'that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc). "Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Id.*

A plaintiff who lacks direct evidence of discrimination may establish a prima facie case of discrimination through circumstantial evidence by showing that: 1) she is a member of a protected class; 2) she suffered an adverse employment action; 3) she was qualified for the position lost or not gained; and 4) she was replaced by an individual outside the protected class. *Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992). Plaintiff may also establish the fourth prong of a prima facie case of discrimination by showing that she was treated less favorably than a similarly-situated individual outside the protected class. *See Clayton v. Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir. 2002).

If the plaintiff establishes a prima facie case, the employer can overcome the prima facie case by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. If the employer carries its burden, the plaintiff must show

---

[7] Federal case law interpreting Title VII is applicable to claims asserted under Ohio Rev. Code § 4112.02. *See Ohio Civil Rights Comm'n v. Ingram*, 630 N.E.2d 669 (Ohio 1994); *Little Forest Med. Center of Akron v. Ohio Civil Rights Comm.*, 575 N.E.2d 1164 (Ohio 1991); *Osman v. Isotec, Inc.*, 960 F. Supp. 118, 120-21 (S.D. Ohio 1997) (Dlott, J.). Accordingly, this Court's opinion with respect to plaintiff's Title VII claims applies with equal force and effect to plaintiff's discrimination claims asserted under the Ohio civil rights statute.

that the reasons offered by the employer were not its true reasons but were a pretext for discrimination. *Id.* at 804.

Plaintiff has failed to present any direct evidence of discrimination in this case. Nor has she produced probative evidence in support of her prima facie case of discrimination to establish a circumstantial case of discrimination. Specifically, plaintiff has not presented evidence establishing the fourth prong of her prima facie case of discrimination. She has failed to show that she was replaced by an individual outside the protected class, *Mitchell,* 964 F.2d at 582, or that she was treated less favorably than a similarly-situated individual outside the protected class. *Clayton,* 281 F.3d at 610. To the contrary, the undisputed evidence demonstrates that non-Asian, non-Filipino employees were terminated for the same deficiencies in accuracy for which plaintiff was terminated.

Moreover, defendants have articulated a legitimate, nondiscriminatory reason for plaintiff's discharge, *i.e.,* that plaintiff's accuracy rating consistently fell below acceptable levels for pickers, and plaintiff has failed to present probative evidence sufficient to rebut defendants' legitimate nondiscriminatory reason. As plaintiff has failed to present evidence that creates a genuine issue of fact as to whether the reason offered by defendants was its true reason for discharging plaintiff, *McDonnell Douglas,* 411 U.S. at 804, summary judgment should be granted for defendants on plaintiff's race and national origin discrimination claims.

### D. Summary judgment should be granted for defendants on plaintiff's hostile work environment claim.

Discrimination based on a hostile or abusive work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive

13

working environment." *Harris v. Forklift Systems*, 510 U.S. 17, 21 (1993) (citations and internal

quotation marks omitted).  To establish a prima facie case of a hostile work environment based

on national origin, plaintiff must show that: (1) she is a member of a protected class; (2) she was

subjected to unwelcome harassment; (3) the harassment was based on her national origin; (4) the

harassment created a hostile work environment; and (5) the employer is vicariously liable.  *Clark*

*v. United Parcel Service, Inc.*, 400 F.3d 341, 347 (6th Cir. 2005); *Williams v. General Motors*

*Corp.*, 187 F.3d 553, 560-561 (6th Cir. 1999).  "An employer is subject to vicarious liability to a

victimized employee for an actionable hostile environment created by a supervisor with

immediate (or successively higher) authority over the employee."  *Faragher v. City of Boca*

*Raton*, 524 U.S. 775, 807 (1998).  Where the plaintiff shows actionable discrimination and a

"tangible employment action" such as "discharge, demotion, or undesirable reassignment"

employer liability is automatic.  *Williams*, 187 F.3d at 561 n.2 (citing *Faragher*, 524 U.S. at 807-

808).  *See also Clark,* 400 F.3d at 348.  If there was no tangible employment action, an employer

can escape liability only (1) if it took reasonable care to prevent and correct any harassing

behavior; and (2) if the plaintiff employee unreasonably failed to take advantage of any

preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Faragher*, 524 U.S. at 807-808 (citing *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 762-

63 (1998)).

  In the instant case, there is no dispute that plaintiff is a member of a protected class.

However, plaintiff has failed to present probative evidence that she was subjected to unwelcome

harassment, that the harassment was based on her national origin, and that the harassment created

a hostile work environment.  Plaintiff testified that while employed at SanMar, no one ever made

a comment to her about being Filipino or about her race. (Famularcano Dep. at 113:3-115:20). The only "harassment" plaintiff complained about was alleged "bullying" by a fellow co-worker. Yet, plaintiff testified that the alleged bullying had nothing to do with her national original. (Famularcano Dep. at 115:14-20). There is no evidence establishing the second, third, and fourth prongs of plaintiff's prima facie case of a hostile work environment. Accordingly, defendants' motion for summary judgment should be granted on plaintiff's hostile work environment claim.

### E. Summary judgment should be granted for defendants on plaintiff's retaliation claims.

As best the Court can discern, it appears that plaintiff is alleging two separate retaliation claims. She alleges that defendants retaliated against her by discharging her and by giving her an unfavorable job reference after she filed an EEOC charge of discrimination. (Doc. 1).

In order to establish a prima facie case of retaliation, a plaintiff must establish that: 1) she engaged in activity protected by the discrimination statutes; 2) the exercise of her civil rights was known to the defendant; 3) thereafter, the defendant took an employment action adverse to the plaintiff; and 4) there was a causal connection between the protected activity and the adverse employment action. *See Harrison v. Metropolitan Govt. of Nashville,* 80 F.3d 1107, 1118 (6th Cir. 1996), *overruled on other grounds as recognized by Jackson v. Quanex Corp.,* 191 F.3d 647, 667 (6th Cir. 1999). To establish the causal connection required in the fourth prong, the plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not participated in protected activity. *See EEOC v. Avery Dennison Corp.,* 104 F.3d 858, 861 (6th Cir. 1997); *Jackson v. RKO Bottlers of Toledo, Inc.,* 743 F.2d 370, 377 (6th Cir. 1984).

Once the plaintiff establishes a prima facie case of retaliation, the burden shifts to the

defendant to proffer a legitimate, non-retaliatory reason for the adverse employment action.

*Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1082 (6th Cir. 1994). If the

defendant meets its burden of production, the burden shifts back to the plaintiff to show that the

reasons proffered by the defendant are but a pretext for retaliation. *Id.* However, the burden of

persuasion remains with the plaintiff at all times. *St. Mary's Honor Center v. Hicks,* 509 U.S.

502, 511 (1993).

      With respect to plaintiff's retaliatory discharge claim, plaintiff fails to establish a prima

facie case because she did not engage in lawfully protected activity and there is no evidence of a

causal connection between her conduct and defendants' termination of her employment. "Under

Title VII, there are two types of protected activity: participation in a proceeding with the [EEOC]

and opposition to an apparent Title VII violation." *Wasek v. Arrow Energy Services, Inc.,* 682

F.3d 463, 469 (6th Cir. 2012) (citing *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d

1304, 1313 (6th Cir.1989)). In determining whether "opposition" activity is protected, "Courts

are required to balance the purpose of [Title VII] to protect persons engaging reasonably in

activities opposing . . . discrimination, against Congress' equally manifest desire not to tie the

hands of employers in the objective selection and control of personnel." *Booker,* 879 F.2d at

1312 (internal quotations omitted). Where an employee's conduct interferes with the

performance of her job such as to render her ineffective, disrupts the employment environment,

or interferes with the employer's goals, the opposition conduct is not protected. *Id.* It is not

necessary that the opposed activity actually constitute a violation of Title VII, but the employee

opposing the conduct must have a good faith belief that the conduct she is complaining about

violates Title VII. *Wasek,* 682 F.3d at 469.

Plaintiff has failed to proffer any evidence supporting her retaliatory discharge claim. In addition, the only arguably protected activity plaintiff engaged in prior to her discharge was her single complaint of "bullying" by a fellow employee. (Doc. 37, Ex. I to Holt Decl.) (memorandum dated 5/12/08); (Famularcano Dep. at 29:14-31:23). However, plaintiff admitted that the bullying charge was not related to her national origin. (Famularcano Dep. at 115:14-20). Thus, plaintiff did not have a good faith belief that the conduct of which she complained violated Title VII. *Wasek*, 682 F.3d at 469. In addition, plaintiff has failed to present probative evidence of any causal connection between her bullying complaint in May 2008 and her discharge in October 2009. Accordingly, there is insufficient evidence in the record establishing the first and fourth prongs of plaintiff's prima facie case of retaliatory discharge.

With respect to her unfavorable job reference claim, plaintiff fails to establish the causal connection between the filing of her EEOC charge and the alleged unfavorable reference given to a prospective employer by SanMar. Plaintiff testified that she had applied for a job with Cincinnati Sub-Zero after her employment with SanMar was terminated. She testified that her brother, who used to work for Cincinnati Sub-Zero, told her that his supervisor said plaintiff "was not considered for the position because there is a problem on me (plaintiff) with–on my previous employer which they would rather not discuss." (Famularcano Dep. at 15:18-16:25). When asked whether her brother asked what the problem was, plaintiff responded, "No." *Id.* This evidence, which is the only evidence arguably related to this retaliation claim, cannot be considered by the Court on a motion for summary judgment as it constitutes inadmissible hearsay. *See Albert v. United States,* 481 F.3d 404, 409 (6th Cir. 2007); *Carter v. University of Toledo*, 349 F.3d 269, 274 (6th Cir. 2003). Nor does the evidence, even if admissible, establish

17

that the "problem" referenced by the supervisor was plaintiff's filing of an EEOC charge. In the absence of any competent, admissible evidence, plaintiff fails to establish the fourth prong of her prima facie case for her second retaliation claim. Accordingly, summary judgment should be granted for defendants on both of plaintiff's retaliation claims.

### F. The Court should decline supplemental jurisdiction over plaintiff's state law claim of intentional infliction of emotional distress.

To the extent that plaintiff's complaint alleges a state law claim of intentional infliction of emotional distress against defendants, it is not necessary to address the merits of this claim. Pursuant to 28 U.S.C. § 1367(c)(3), the district court has the discretion to dismiss claims over which it has supplemental jurisdiction when it has dismissed all claims over which it has original jurisdiction. *Dobbs-Weinstein v. Vanderbilt Univ.,* 185 F.3d 542, 546 (6th Cir. 1999). Moreover, the Sixth Circuit has recognized a general rule disfavoring a district court's exercise of supplemental jurisdiction when federal question claims are dismissed before trial. *See Gaff v. Federal Deposit Ins. Corp.,* 814 F.2d 311, 319 (6th Cir. 1987) (citing *United Mine Workers v. Gibbs,* 383 U.S. 715 (1966)). *See also Brooks v. Rothe,* 577 F.3d 701, 709 (6th Cir. 2009) ("If the federal claims are all dismissed before trial, the state claims generally should be dismissed as well.") (quoting *Wojnicz v. Davis,* 80 F. App'x 382, 384-85 (6th Cir. 2003)). Therefore, if the Court adopts the undersigned's recommendation to grant defendants' motion for summary judgment, then the Court should decline to exercise supplemental jurisdiction over plaintiff's state law claim of intentional infliction of emotional distress claims and dismiss this claim without prejudice.

## IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' motion for summary judgment be **GRANTED** and this case be **TERMINATED** on the Court's docket.

2. The Court decline to exercise supplemental jurisdiction over plaintiff's state law claim of intentional infliction of emotional distress and dismiss this claim without prejudice.

Date: 9/18/12

Karen L. Litkovitz
United States Magistrate Judge

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

ELENA FAMULARCANO,                      Case No. 1:10-cv-511
    Plaintiff

                              Spiegel, J.
    vs                                  Litkovitz, M.J.

SANMAR CORP., et al.,
    Defendants.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Elena Famularcano
3418 Springdale Road
Hamilton, Ohio 45251

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☐ Agent ☐ Addressee

B. Received by ( Printed Name)     C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
☑ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number
(Transfer from service label)

7002 3150 0000 8389 9302

102595-02-M-1540

PS Form 3811, February 2004     Domestic Return Receipt